1 | UNITED STATES DISTRICT COURT
  | NORTHERN DISTRICT OF TEXAS
2 | AMARILLO DIVISION

3 | UNITED STATES OF AMERICA,)
  |          Government,  )
4 |                        )
  | vs.                    )Cause No. 2:23-CR-00074
5 | JAMES DUNCAN,          )
  |          Defendant.    )
6 |

7 |     _____

8 |              REVOCATION HEARING
  |   BEFORE THE HONORABLE MATTHEW J. KACSMARYK
9 |          UNITED STATES DISTRICT JUDGE

10 |             OCTOBER 30, 2025
   |             AMARILLO, TEXAS
11 |

12 |     _____

   |          A P P E A R A N C E S
13 |

   | FOR THE GOVERNMENT:
14 | UNITED STATES ATTORNEY'S OFFICE
   | 500 SOUTH TAYLOR STREET, SUITE 300
15 | AMARILLO, TEXAS 79101
   | BY:  MR. JOSHUA J. FRAUSTO
16 |

17 | FOR THE DEFENDANT:
   | FEDERAL PUBLIC DEFENDER'S OFFICE
18 | 600 SOUTH TAYLOR STREET, SUITE 2300
   | AMARILLO, TEXAS 79101
19 | BY:  MR. ERIC COATS

20 |

21 | FEDERAL OFFICIAL COURT REPORTER:
   | CHRISTINE M. ORR
22 | 205 SE 5TH AVENUE
   | AMARILLO, TEXAS, 79101
23 | (806)468-3816

24 | PROCEEDINGS RECORDED BY STENOGRAPHY; TRANSCRIPT
   | PRODUCED BY COMPUTER-AIDED TRANSCRIPTION
25 |

1                              **INDEX**

2       **PROCEEDINGS**                                    **PAGE**

3       COURT'S TENTATIVE DETERMINATION              8

4       **SENTENCING EVIDENCE/ARGUMENT**

5       ON BEHALF OF THE GOVERNMENT............      8

6       ON BEHALF OF THE DEFENDANT.............      9

7       DEFENDANT'S ALLOCUTION.................      10

8       **IMPOSITION OF SENTENCE**

9       COURT'S STATEMENT OF SENTENCE..........      16

10      COURT'S STATEMENT OF REASONS...........      22

11                      *  *  *  *  *  *  *

12      ADVISEMENT OF RIGHT TO APPEAL..........      26

13      REPORTER'S CERTIFICATE.................      27

14

15

16

17                      *  *  *  *  *  *  *

18

19

20

21

22

23

24

25

```
1              [CALL TO THE ORDER OF THE COURT:]

2              THE COURT:  The Court calls criminal

3     action number 2:23-CR-00074-Z-1, United States of

4     America versus James Duncan.  Are the parties ready?

5              MR. FRAUSTO:  United States is present and

6     ready, your Honor.

7              MR. COATS:  Defendant's ready, your Honor.

8              THE COURT:  Counsel for the United States

9     is present.  Counsel for the Defendant is present.

10    Mr. Duncan, please acknowledge your presence in

11    court by stating your full name.

12             THE DEFENDANT:  James Duncan.

13             THE COURT:  And please raise your right

14    hand.  My courtroom deputy will administer the oath.

15             [DEFENDANT SWORN.]

16             THE COURT:  And Mr. Duncan, from this

17    point forward, you may participate seated or

18    standing, whatever is most comfortable and

19    consistent with the advice of counsel.  We are here

20    to consider your terms of supervised release.  The

21    U.S. probation officer filed the petition which the

22    Court signed on August 1st, 2025.  This was followed

23    by the Government's motion to revoke supervised

24    release filed on September 26th, 2025.  Combined,

25    these documents alleged violations of other
```

1    conditions of supervised release.  Relevant here,

2    the motion to revoke supervised release in document

3    number 82 alleged violation of two conditions.

4    First, a violation of other condition number nine,

5    which stated, quote:  The Defendant shall

6    participate in outpatient mental health treatment

7    services as directed by the probation officer until

8    successfully discharged.  These services may include

9    medications prescribed by a licensed physician.  The

10    Defendant shall contribute to the costs of services

11    rendered copayment at a rate of at least $20 per

12    month.  Second, a violation of other condition

13    number 10, which stated, quote:  The Defendant shall

14    participate in an outpatient program approved by the

15    probation officer for treatment of narcotic, drug or

16    alcohol dependency that will include testing for the

17    detection of substance use, abstaining from the use

18    of alcohol and/or all other intoxicants during and

19    after completion of treatment.  The Defendant shall

20    contribute to the costs of services rendered

21    copayment at a rate of at least $20 per month.  As

22    stated in the motion, Defendant allegedly violated

23    these conditions as following:  Number one, on or

24    about March 4, March 18, and April 7, 2025, the

25    Defendant failed to appear and participate in mental

```
 1    health treatment services.  Number two:  On or about
 2    May 6 and 29 of 2025 and June 5 and 12 of 2025, the
 3    Defendant failed to appear for individual mental
 4    health counseling sessions.  Number three, in or
 5    about April 20, 2025, the Defendant used and
 6    possessed marijuana, an illegal controlled
 7    substance.  Number four, on or about February 25,
 8    March 17, March 27, April 21, May 28, and June 3rd
 9    and June 23rd of 2025, the Defendant failed to
10    submit urine specimen as directed by the Court.
11    Now, Mr. Frausto, here, the motion referenced
12    Grade B and Grade C violations.  Which of those
13    violations does the Government proceed with?
14            MR. FRAUSTO:  Based on the violations
15    listed in the motion to revoke, we are proceeding C,
16    Violation Grade C, your Honor.
17            THE COURT:  Okay.  So this Court will only
18    adjudicate the portion of the motion referencing the
19    Grade C violation, and that is what is adjudicated
20    in this hearing today, not the Grade B violation.
21            Now, Mr. Coats, did you and your client
22    receive a timely copy of that motion to revoke
23    supervised release?
24            MR. COATS:  We did, your Honor.
25            THE COURT:  Did you have a full and
```

```
 1   complete opportunity to review the motion with your
 2   client?
 3            MR. COATS:  I did.
 4            THE COURT:  Are you confident that your
 5   client fully understands the motion?
 6            MR. COATS:  He does, your Honor.
 7            THE COURT:  Do you agree that your client
 8   is competent and capable of fully participating in
 9   this revocation hearing?
10            MR. COATS:  Yes, sir.
11            THE COURT:  Now, Mr. Duncan, do you
12   understand that we are here to consider your terms
13   of supervised release and whether to revoke those
14   terms and, if necessary, what sentence to impose?
15            THE DEFENDANT:  Yes, your Honor.
16            THE COURT:  And do you understand the
17   allegations contained in the motion to revoke
18   supervised release and the consequences of pleading
19   true to those allegations?
20            THE DEFENDANT:  Yes, your Honor.
21            THE COURT:  Okay.  Now, Mr. Coats, how
22   does your Defendant intend to plead, true or not
23   true?
24            MR. COATS:  True, your Honor.
25            THE COURT:  Mr. Duncan, I will ask you
```

1  directly.  Do you plead true or not true to the

2  violations alleged in the motion to revoke

3  supervised release?

4          THE DEFENDANT:  True.

5          THE COURT:  And is this decision to plead

6  true a knowing and voluntary decision on your part

7  after consulting with capable and effective counsel?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  Let's turn to

10  statements, arguments and allocution.  Mr. Frausto,

11  did the Government comply with any and all victim

12  reporting requirements?

13          MR. FRAUSTO:  We did, your Honor.

14          THE COURT:  Do you have any victim impact

15  statements?

16          MR. FRAUSTO:  No, your Honor.

17          THE COURT:  Mr. Coats, the Court did not

18  receive character statements on behalf of Defendant,

19  but I'll waive any deadlines that would have applied

20  if you intend to present character statements.

21          MR. COATS:  We do not, your Honor.

22          THE COURT:  So let's turn to arguments.

23  Here, the Court anticipates calculating an advisory

24  policy statement range that includes an imprisonment

25  range of five to 11 months.  The Court has

 1    tentatively determined that a sentence within that

 2    advisory policy statement range is appropriate and

 3    necessary to give weight to the 3553(a) factors that

 4    apply at revocation but never 3553(a)(2)(A) which

 5    does not.  That's without prejudice to either party

 6    arguing for a particular point within the range.  If

 7    you make an untimely motion for variance or

 8    departure, please know it may be overruled simply

 9    because it's untimely.  And also, you must use only

10    the permissible 3553(a) factors for arguing

11    variance, and you must use the guidelines provisions

12    and identify those if arguing for departure.  With

13    those guardrails in place, Mr. Frausto, you may

14    proceed.

15            MR. FRAUSTO:  Your Honor, based on the

16    permissible 3553(a) factors and the fact that the

17    Defendant based on the nature of the violations and

18    the amount of violations after being released on

19    supervised release on January 23rd, 2025, we believe

20    a sentence at the top end of that advisory policy

21    statement is appropriate in this case.  So we would

22    recommend a sentence of 11 months.

23            THE COURT:  Thank you, Mr. Frausto.  The

24    Court will give appropriate weight to the argument

25    of the AUSA.  I turn next to the AFPD.  Mr. Coats,

1    you may take as much time as you need.

2           MR. COATS:  Thank you, your Honor.  My

3    client did have some failings on supervised release,

4    but the number of failings is greatly amplified by

5    time that's not taken into account for his recovery

6    from an accident.  He was hit by on automobile.

7    Both of his legs were broken.  One of his legs was

8    badly burned.  And some of those failure to report

9    for urinalysis testing especially were misses when

10   the probation office did, in fact, know he was

11   hospitalized.  So although there are allegations

12   that are completely true and all of the allegations

13   are true, but some of those could have been excused

14   because of his incapacity at that time.  After his

15   legs were repaired, he also suffered infection that

16   required rehospitalization.  And so even though

17   there are ample violations, I do believe it's

18   magnified to a term -- to an extent that is

19   exaggerated, your Honor.  And for that reason, we

20   would ask for a sentence at the middle or low end of

21   the guidelines.

22           THE COURT:  Thank you, Mr. Coats.  I have

23   your argument.  It will receive appropriate weight.

24   And thank you for further explaining some of the

25   factual context for those violations in the motion.

1          Mr. Duncan, you have an absolute right to

2   allocute at this revocation hearing.  Allocution

3   simply means that you may tell the Court information

4   you think is relevant to the revocation decision.

5   You have an absolute right to allocute, but you can

6   never be forced to allocute.  Is there anything you

7   would tell the Court in the form of an allocution?

8          THE DEFENDANT:  Yes, your Honor.  Whenever

9   I was getting out before, you know, my grandma had

10  kidney cancer and everything, and that's why I was

11  in such a rush and wanted to get out before so I

12  could say goodbye to her.  I never got to.  She did

13  die like -- you know, right after I got out.  I

14  never got to see her again.  And that's when I

15  started, you know, doing drugs and was like forget

16  everything.  She was my world.  She raised me and I

17  miss her every day.  But you know, I'm not from

18  Texas either, you know.  I just been waiting to get

19  off probation so I can get out of Texas because I'm

20  not from here.  I was headed back to Alaska, back to

21  Washington, Alaska, whenever I got caught up here.

22  And you know, all my family is in Arkansas.  Right

23  now, my girlfriend has to have hip surgery because

24  she got hit by a dude with a stick and everything.

25  The same dude that ran me over as a matter of fact

1    and some crazy meth head we didn't even know.  But

2    yeah, we gone through a lot since I've been in

3    Texas.  I hate Texas.  I just want to get the hell

4    out of here.  And definitely hate being stuck on

5    probation.  Texas just kept me in this hell I have

6    been ready to get out of and -- yeah.  There's no

7    more probation.  I just want to go straight up to

8    Kansas and then go right from there and go down into

9    Missouri and -- yeah, be close enough to my family.

10   I know Kansas City will -- that's where I had my hip

11   replacement surgery and everything and all I been

12   waiting for is to get away from Texas.  I hate this

13   place.  Everybody's on meth or freaking crazy.  And

14   I don't usually do this meth.  These teeth got

15   knocked out.  That's not drugs.  I'm a pothead.

16   That's true.  But -- I mean, but as far as like, you

17   know, the drug counseling, I really shouldn't have

18   even had that.  It's hard enough for me to get a job

19   or get anything together, you know.  It's hard for

20   me to even let somebody let me stay at their place,

21   you know.  I mean -- and you know, I don't have a

22   drug record.  I have a weed pipe on my record.

23   That's it.  That's all I have as far as drugs on my

24   record.  And -- you know, since I got out, I was --

25   pretty much quit drinking, but I was smoking weed

1  and the meth thing that was just -- yeah, couple

2  times because everybody around there does meth.  And

3  like while trying to find somebody to smoke weed

4  with and everybody was on meth and I was like ah,

5  and I regretted it immediately.  Yeah.  It's not my

6  style.  It makes me all paranoid and stuff.  I hate

7  it.  That's about all I have to say is I'm just

8  trying to get back to my life.  Back to like it was

9  when I had one.  Get these face tats removed, be

10 able to get a job and just -- you know, it's --

11 tomorrow will be 15 years to the day when I got the

12 first charge, the misdemeanor, that's turned all

13 this into federal and everything.  Fifteen years

14 ago.  I haven't had a life for 15 years, man.  I

15 just -- and now it'll be, you know -- I'll be --

16 nobody will make me register, you know, even though,

17 I beat the state one because I wasn't supposed to

18 register in State of Texas.  It's not considered a

19 sex offense, you know.  It's a misdemeanor that I

20 got and -- just ruined my life.  And then when I got

21 hit by the truck, I ran over -- dude tried to kill

22 me straight up, but they post on the news about my

23 criminal record and all this and everything and make

24 me look bad when I'm the one who got ran over.  It

25 was crazy, man.  I hate Texas.  I'm just trying to

1   get out.

2         THE COURT:  Okay.  The Court will give

3   appropriate weight to that allocution and then also

4   because you've suffered just a series of calamities,

5   I will make recommendations for your continued care.

6   If there are particular medical needs --

7         THE DEFENDANT:  That would include me

8   staying in Texas.

9         THE COURT:  Understood.  So we can make a

10  recommendation for a particular facility as well.

11  So that's part of the recommendations section of

12  this hearing.  It just happens at the end of the

13  hearing.  So if there are particular BOP facilities,

14  perhaps in the western region of the Bureau of

15  Prisons, we can look at those recommendations but

16  also medical recommendations.  So that will come at

17  the end of the hearing.

18        MR. COATS:  Your Honor, for his immediate

19  custody, I think a hospital, FMC Fort Worth, would

20  be best.

21        THE COURT:  Okay.  We'll take those up at

22  the end.  Thank you, Mr. Coats, for the preview --

23        MR. COATS:  Okay.

24        THE COURT:  -- of those recommendations.

25  But also given his desire to return to somewhere on

1    the west coast, I'm also amenable to making a

2    specific recommendation for a western region BOP

3    facility.  I have the list of facilities that have

4    the RDAP program, but if proximity to Washington

5    state is a priority, we may need to look at FCI

6    Sheridan in Oregon or something specific to the

7    Washington, King County, Seattle area.  So anyway,

8    I'll allow y'all an attorney-client communication

9    about these recommendations.  But given that

10   allocution, I want to make sure that we address his

11   concerns.

12          Now, with that allocution having now

13   completed and the Court having previewed the

14   recommendations that happen in a separate part of

15   this revocation hearing, do you know of any reason

16   why lawful sentence may not be imposed, Mr. Coats?

17          MR. COATS:  No, your Honor.

18          THE COURT:  Any reason known to the

19   Government?

20          MR. FRAUSTO:  None, your Honor.

21          THE COURT:  Having considered the motion,

22   Defendant's verbal admission of true, all evidence

23   presented, the Court grants the Government's motion

24   based on a preponderance of the evidence.  It is the

25   judgment of the Court that the term of supervised

1    release previously imposed in this case is hereby

2    revoked.  The Court finds that the statutory maximum

3    custody is two years and that the statutory maximum

4    for redisposition of supervised release is three

5    years minus revocation sentence.  The Court finds

6    that Defendant's Chapter 7 violation computations in

7    accord with the advisory policy statements are as

8    follows:  A Violation Grade of C.  A Criminal

9    History Category of III.  An imprisonment range of

10   five to 11 months.  A fine of none.  And a

11   supervised release maximum of three years minus

12   revocation sentence.  Any objection to those

13   computations, Mr. Coats?

14          MR. COATS:  No, your Honor.

15          THE COURT:  Any objection from the

16   Government?

17          MR. FRAUSTO:  No, your Honor.

18          THE COURT:  There being no objections, the

19   Court will now impose sentence.  Considering the

20   motion, Defendant's plea of true, the permissible

21   factors at Section 3583(e), the exceptions under

22   Section 3583(g) the Chapter 7, part A commentary,

23   explaining that revocation should sanction primarily

24   Defendant's breach of trust, and having consulted

25   the advisory policy statement range and Supreme

1    Court precedent explaining that Section

2    3553(a)(2)(A) may not be considered at revocation,

3    specifically, *Esteras versus United States*, a 2025

4    case from the Supreme Court.  It is the judgment of

5    this Court that the Defendant, James Duncan, be

6    committed to the custody of the Federal Bureau of

7    Prisons for a period of 11 months.  This represents

8    a sentence within the advisory policy statement

9    range.  The Court further orders that upon release

10   from imprisonment, Defendant shall be placed on

11   supervised release for a term of three years minus

12   the current revocation sentence.  While on

13   supervised release, Defendant shall comply with

14   mandatory conditions listed at Section 3583(d) and

15   section 5D1.3(a), standard conditions listed at

16   section 5D1.3(c) and the following discretionary,

17   special and additional conditions derived from

18   Sections 5D1.3(b), (d) and (e) of the Guidelines

19   Manual.  Number one, the Defendant shall participate

20   in outpatient mental health treatment services as

21   directed by the probation officer until successfully

22   discharged.  These services may include medications

23   prescribed by a licensed physician.  The Defendant

24   shall contribute to the costs of services rendered

25   copayment at a rate of at least $20 per month.

```
 1   Number two, the Defendant shall participate in an

 2   outpatient program approved by the probation officer

 3   for treatment of narcotic, drug or alcohol

 4   dependency that will include testing for the

 5   detection of substance use, abstaining from the use

 6   of alcohol and all other intoxicants during and

 7   after completion of treatment, and contributing to

 8   the costs of services rendered copayment at a rate

 9   of at least $20 per month.  Number three, pursuant

10   to the Sex Offender Registration and Notification

11   Act, SORNA, 42 U.S. Code 16901 and follows, the

12   Defendant must register and keep the registration

13   current with state and local law enforcement as

14   directed by the probation officer in each

15   jurisdiction where he resides, is employed or is a

16   student.  The Defendant must no later than three

17   business days after each change of name, residence,

18   employment or student status, appear in person in at

19   least one of the jurisdictions and inform that

20   jurisdiction of all changes in the information

21   required in the sex offender registry.  The

22   Defendant must also initially register in the

23   jurisdiction in which he was convicted, if such

24   jurisdiction is different from the jurisdiction of

25   residence.  Initial registration shall occur before
```

1    completion of the sentence of imprisonment with

2    respect to the offense giving rise to the

3    registration requirement.  The Defendant must

4    provide to the appropriate official all information

5    required in accordance with SORNA, S-O-R-N-A,

6    Guidelines and additional state specific regulations

7    for inclusion in the sex offender registry.  The

8    Defendant must provide written verification of

9    registration to the probation officer within three

10    business days following registration.  This

11    registration shall be renewed as required by the

12    assigned tier.  And Mr. Coats, did you and your

13    client receive a timely copy of that notice of

14    intent to impose conditions of supervised release?

15            MR. COATS:  We did, your Honor.

16            THE COURT:  Did you have a full and

17    complete opportunity to review the document with

18    your client?

19            MR. COATS:  I did, your Honor.

20            THE COURT:  Did you explain all of the

21    conditions of supervised release stated in the

22    written notice with special attention to the

23    discretionary, special and additional conditions

24    appearing on page four and pronounced orally at the

25    revocation hearing?

1    MR. COATS:  Yes, sir.

2    THE COURT:  Does your client have any

3  objections to any of the conditions of supervised

4  release stated in the written notice and pronounced

5  orally at the revocation hearing?

6    MR. COATS:  No objections, your Honor, but

7  he would like a clarification.  I have explained to

8  him that the Court is imposing the duty -- any duty

9  that might exist under SORNA.  And so if he does not

10  have a duty to continue registration under SORNA,

11  would that section not apply any longer?

12    THE COURT:  So it's my reading of the

13  penultimate sentence in discretionary, special and

14  additional condition number three which states:  The

15  Defendant must provide to the appropriate official

16  all information required in accordance with SORNA

17  Guidelines and additional state-specific regulations

18  for inclusion in the Sex Offender Registry.  So

19  depending on his final placement, he would need to

20  ascertain whether there is a state requirement.  I

21  know that this has been thoroughly litigated here in

22  Texas.  Is there any wording that would make that

23  more clear?

24    MR. COATS:  No, your Honor.  I think that

25  clears it up.  If -- so long as he provides evidence

1    of his registration status, that duty will either be

2    imposed or it will not, depending on his status.

3              THE COURT:  Okay.  I can add in -- and

4    it's actually -- I'm sorry.  I said penultimate but

5    it's actually the third to last sentence that I just

6    read aloud.  The penultimate sentence of that

7    discretionary, special and additional condition

8    number three states:  The Defendant must provide

9    written verification of registration to the

10   probation officer within three business days

11   following registration.  I will add a handwritten

12   notation if required by the relevant state law and

13   officials.

14             THE DEFENDANT:  It doesn't matter.  I'm

15   going to appeal it anyways.

16             THE COURT:  Does that help clarify the

17   nature of that?

18             MR. COATS:  Yes, sir.  Thank you, your

19   Honor.

20             THE COURT:  Okay.  I will put a signature

21   block next to that handwritten notation, signaling

22   your assent to that handwritten modification.  I'll

23   have a signature block for the AUSA, AFPD and

24   Defendant, and this will be made part of the

25   permanent record.  It'll also be reflected in the

1    written judgment.  And you may simply initial where

2    I provide the line.  My courtroom deputy will

3    provide the handwritten -- I should say the copy of

4    the notice that includes the handwritten addendum or

5    added language.  Please note your assent to that

6    handwritten addition in the relevant signature

7    block, and you may use an initial to signal your

8    assent to that clarification.  And having entered a

9    clarification to discretionary, special and

10   additional condition number three, assented to by

11   the Government, by defense counsel and Defendant

12   himself, this Court now signs that same document,

13   the notice of intent to impose supervised release is

14   made a part of the record in this case and in any

15   record on appeal.  And the oral pronouncement of

16   discretionary, special and additional condition

17   number three should be amended to include that

18   handwritten language, specifically the penultimate

19   sentence in discretionary, special and additional

20   condition number three which should now read:  The

21   Defendant must provide written verification of

22   registration to the probation officer within three

23   business days following registration-if required by

24   the relevant state law and officials.  And that

25   language will be reflected in the final judgment,

1    and the Court finds that the Government, defense

2    counsel and Defendant have assented to this

3    clarification and that relates to his prior

4    litigation and adjudication of SORNA requirements,

5    at least as far as the State of Texas is concerned.

6    But this is designed to ensure that the same legal

7    confusion does not occur if another state is

8    involved.  So with that, the notice and conditions

9    of supervised release stated therein are adopted,

10   ordered and imposed as pronounced and amended by the

11   Court's handwritten notation and as further

12   documented in the final written judgment.  With all

13   of that amendment now noted in the notice and by

14   oral pronouncement, does Defendant have any

15   objection to the statement of sentence?

16           MR. COATS:  No, your Honor.

17           THE COURT:  And with those amendments and

18   handwritten adjustments now in place, does the

19   Government object to the statement of sentence?

20           MR. FRAUSTO:  No, your Honor.

21           THE COURT:  The Court hereby orders the

22   sentence imposed as stated, and the Court will now

23   enter its statement of reasons.  Here, the sentence

24   is sufficient but not greater than necessary to

25   comply with the statutory purposes and permissible

1   factors set forth in 18 U.S.C. Section 3553.  First,

2   Section 3553(a)(1).  Here, the history and

3   characteristics does -- characteristics of the

4   Defendant does include numerous prior convictions.

5   In 2010, Defendant was convicted of First Degree

6   Assault after grabbing his then girlfriend by the

7   throat and choke-slamming her against the wall.

8   That same year, Defendant was also convicted of

9   Communication with a Minor for Immoral Purposes,

10  having sexual intercourse with a 14-year-old girl.

11  Defendant has been convicted of Harassment, Previous

12  Conviction or Threat to Kill, Criminal Trespass

13  Making a False Misleading Statement to a Public

14  Servant and Assault Causing Bodily Injury to a

15  Family Member.  And finally, in 2019, Defendant was

16  convicted for Arson after burning down a trailer

17  home of another.  Having considered this sometimes

18  violent criminal history, the Court finds that the

19  3553(a)(1) facts and factors are extremely

20  aggravating in this case and do warrant a revocation

21  sentence at the top of the advisory policy statement

22  range.

23          Second, Section 3553(a)(2)(B) and

24  (a)(2)(C), which requires the Court to afford

25  adequate deterrence to criminal conduct and to

 1    protect the public from further crimes of the

 2    Defendant.  Here, Defendant failed to participate in

 3    mandatory treatment, counseling and other

 4    requirements.  He used marijuana and failed to

 5    submit to multiple mandatory specimen collections.

 6    These violations represent a grave and egregious

 7    breach of the Court's trust; and primarily for that

 8    reason and those factors, the Court did impose a

 9    sentence at the top of the advisory policy statement

10    range to give appropriate weight to the breach of

11    trust that is reflected and repeated throughout the

12    motion.

13            Now, the Court imposed a term of

14    supervised release for added deterrence and

15    protection.  The Court specifically finds Defendant

16    will benefit from continued supervision as he has

17    demonstrated a repeated willingness to avoid

18    compliance with SORNA and registration requirements,

19    but the Court did modify special and discretionary

20    and additional condition number three to allay

21    Defendant's concerns about state compliance.  In

22    light of the Fifth Circuit's recent opinion in

23    Diggles, this Court adopted, imposed and ordered the

24    discretionary conditions because they are consistent

25    with Section 3583(d)(1), (d)(2) and (d)(3) and the

1    Court expressly states that those discretionary

2    conditions involve no greater deprivation of liberty

3    than reasonably necessary.

4            Now, Mr. Coats we have discussed

5    Defendant's extensive medical injuries.  I am

6    inclined to represent FMC Fort Worth.  I'm inclined

7    to recommend a full medical evaluation to address

8    all those maladies.  Are there any mental health or

9    substance abuse treatment recommendations you would

10   request?

11           MR. COATS:  Your Honor, my client has

12   changed his mind.  He would like to ask the Court

13   for the Seattle-Tacoma, Sea-Tac unit.

14           THE COURT:  Okay.

15           MR. COATS:  In order -- for reasons stated

16   previously.

17           THE COURT:  So even with all of the

18   medical issues and injuries, the preference here is

19   for geography over --

20           THE DEFENDANT:  I just want to get away

21   from Texas and judges like you.

22           THE COURT:  Understood.

23           MR. COATS:  Yes, your Honor.

24           THE COURT:  So that's the priority with

25   that recommendation.

```
 1              MR. COATS:  Yes, your Honor.

 2              THE COURT:  Okay.  So here, the Court does

 3   recommend that the Defendant be allowed to serve

 4   this term of incarceration in the western region of

 5   the Bureau of Prisons nearest the Seattle-Tacoma

 6   division or area.  And in the alternative, FCI

 7   Sheridan, which is the next nearest BOP facility

 8   with the RDAP program, and that is in Oregon.  And

 9   the Court does recommend a full medical evaluation

10   at whatever BOP facility Defendant is assigned to,

11   with special attention to the recent injuries

12   sustained during a car accident.

13              Now, Mr. Duncan, if you decide to appeal

14   this revocation decision, you have 14 days.  So

15   remember that your notice of appeal is due within 14

16   days of the date judgment is entered.

17              THE DEFENDANT:  It should be in by today.

18              THE COURT:  And within 14 days of the

19   Government filing its notice of appeal.  So watch

20   those deadlines and coordinate with counsel.  Also,

21   you have an absolute right to apply for leave to

22   appeal in forma pauperis or I.F.P.  And if that is

23   granted, you may be allowed to pursue that appeal at

24   no cost to yourself but instead at a cost to the

25   Government.  Do you understand?
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Is there anything

3   further from the Government?

4          MR. FRAUSTO:  No, your Honor.

5          THE COURT:  Anything further from the

6   Defendant?

7          MR. COATS:  No, your Honor.

8          THE COURT:  Mr. Duncan, you are hereby

9   remanded into the custody of the United States

10  Marshal.  We are adjourned in your case.  Counsel

11  are excused unless they're participating in the next

12  revocation hearing.

13          [PROCEEDINGS CONCLUDED AT 2:34 P.M.]

14

15                  * * * * * * *

16  I certify that the foregoing is a correct transcript

17  from the record of proceedings in the above-entitled

18  matter.  I further certify that the transcript fees

19  format comply with those prescribed by the Court and

20  the Judicial Conference of the United States.

21

22  */s/ Christine M. Orr, RPR,*         12-15-25
       Official Court Reporter            Date

23

24

25